IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MYKIA SHARP,

    *Plaintiff*,

v.

ARTHUR MURRAY
INTERNATIONAL INC. *et al.*,

    *Defendants*.

Case No. 24-cv-2605-ABA

**MEMORANDUM OPINION**

Plaintiff Mykia Sharp has sued Defendants Arthur Murray International Inc. ("AMII"), Arthur Murray Dance Studio of Columbia ("AMDS of Columbia"), and Arthur Murray Dance Studio Baltimore ("AMDS Baltimore")[1] alleging that, during her employment by Defendants, she was subjected to racial and disability discrimination, a hostile work environment, retaliation, and wrongful termination. ECF No. 5. AMDS of Columbia filed a motion to dismiss. ECF No. 14. AMII and AMDS Baltimore filed motions to dismiss or for summary judgment. ECF Nos. 16 and 27. For the reasons that follow, the motions will be granted in part, denied in part, and reserved in part.

---

[1] AMDS Baltimore pointed out that the legal name of its business is "Arthur Murray Dance Studio Baltimore" rather than "Arthur Murray Dance Studio of Baltimore" as stated in the amended complaint. ECF No. 16 at 1. For purposes of this case, all references to "Arthur Murray Dance Studio of Baltimore" are construed under the proper legal name.

1

I.   BACKGROUND[2]

  A.   **AMDS of Columbia**

On May 9, 2023, Plaintiff began her employment as a dance trainer at AMDS of Columbia. ECF No. 5 ¶ FA 6.[3] Plaintiff alleges that she was instructed by Management that her hiring was contingent upon her having a babysitter for her children. *Id*. ¶ FA 7. She alleges that this was discriminatory heightened scrutiny, which caused her extreme distress. *Id*. ¶¶ FA 7–8. Plaintiff also alleges that another "employee told her that she should not call herself an African American because they do not know who they are." *Id*. ¶ FA 9. Plaintiff alleges that she was then subjected to racial comments and slurs by the manager of AMDS of Columbia including statements about her course hair and to "get back on the boat." *Id*. ¶ 11. Plaintiff is dyslexic and alleges that, when she requested a reasonable accommodation for her dyslexia, her manager called her "stupid." *Id*. ¶ 12. Plaintiff alleges that, on May 26, 2023, an hour after complaining to the manager about the disparate treatment, racially charged bullying, and condescending and humiliating comments, she was fired. *Id*. ¶ 13. Plaintiff alleges that she is aware of two other African American employees who were fired for discriminatory reasons. *Id*. ¶ 14; ECF No. 24 at 7.

---

[2] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

[3] Plaintiff's amended complaint includes two paragraphs numbered 6–9 and two or more paragraphs numbered 16–23. For the purposes of this opinion, where the Court refers to duplicated paragraph numbers, the Court will include "Jurisdiction" before the paragraph numbers when referring to paragraphs in the "Jurisdiction" section and "FA" before the paragraph numbers when referring to paragraphs in the "Factual Assertions" section of the amended complaint.

### B.  AMDS Baltimore

Plaintiff alleges that she was subsequently transferred to AMDS Baltimore. ECF No. 1 ¶¶ 13, 15.[4] At AMDS Baltimore, Plaintiff alleges that her manager, John McCraw, brought her fried chicken and indicated that he did so because of her race. *Id.* ¶ 15. On another occasion, Plaintiff alleges that during her performance of a dance routine, Mr. McCraw referred to her movements "as similar to hanging (from a tree) during a lynching." *Id.* ¶ FA 16. During a dance routine training, Plaintiff was injured by a student and required urgent hospitalization. *Id.* ¶ FA 18.[5] Plaintiff then filed a workers' compensation claim. *Id.* She alleges that Mr. McCraw and his wife (the co-manager of AMDS Baltimore) were furious when they were notified and that she was terminated "following" the filing of that claim, on June 15, 2023. *Id.* ¶¶ FA 18–19.

### C.  AMII

Plaintiff only mentioned AMII twice in her factual assertions. In the first instance, she states:

> The discriminatory and retaliatory actions taken against Ms. Sharp by Arthur Murray International Inc. constitute violations of Title VII of the Civil Rights Act of 1964, Maryland Fair Employments Act, the Americans with Disabilities Act and Maryland's common law.

*Id.* ¶ FA 20. In the second instance, she mentions her right to sue letter from the Equal Employment Opportunity Commission. *Id.* ¶ FA 21. Plaintiff broadly states in the

---

[4] Plaintiff's amended complaint does not specify the date on which her employment with AMDS Baltimore began. AMDS Baltimore asserts that she was hired on June 5, 2023, ECF No. 16 at 3; ECF No. 16-1 ¶ 8, and Plaintiff does not dispute this date, ECF No. 23 at 5.

[5] Plaintiff's amended complaint does not specify what date this occurred, but AMDS of Baltimore asserts that it occurred on June 9, 2023. ECF No. 16 at 3; ECF No. 16-1 ¶ 9.

"Parties" section of the amended complaint that "at all relevant times, [AMII] employed the Plaintiff." *Id.* ¶ 2.

### D.  Claims

The complaint asserts five claims: (1) racial discrimination under the Maryland Fair Employment Practices Act ("MFEPA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), (2) disability discrimination under the Americans Against Disabilities Act ("ADA"), MFEPA, and Title VII, (3) hostile work environment under MFEPA, (4) retaliation under MFEPA and Title VII, and (5) wrongful termination in violation of public policy. *Id.* at 6–9. Count 5 (wrongful termination) specified that it was only against AMII. *Id.* ¶ 29. Counts 1–4 do not specify which Defendants they are against; therefore, the Defendants assumed, as this Court will for the purposes of this opinion, that Plaintiff intended Counts 1–4 to apply to all three Defendants. ECF No. 14 at 2; ECF No. 16 at 1–2.[6]

## II.  STANDARD OF REVIEW

Defendants have moved to dismiss, and AMDS Baltimore and AMII have also, in the alternative, moved for summary judgment.

### A.  Failure to State a Claim under Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even

---

[6] Months after the briefing on Defendants' motions to dismiss was complete, Plaintiff filed a motion for leave to file an amended complaint. ECF No. 36. As discussed below, that motion will be denied as moot without prejudice; as to the claims that the Court herein dismisses without prejudice, Plaintiff may file a renewed motion for leave to amend in the event she believes the deficiencies identified herein can be cured. The Court does not decide one way or the other whether the proposed second amended complaint (ECF No. 36-1) cures any of these deficiencies.

assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative relief" by containing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court reviewing a 12(b)(6) motion "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679.

**B.     Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party meets its burden when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and when the nonmovant bears "the burden of proof at trial." *Celotox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to confront the motion with "sufficient evidence . . . for a jury to return a verdict for that party," the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986); *Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). In making this determination, the Court views all facts, and all reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88.

Although Rule 56 permits a party to file a motion for summary judgment "at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), ordinarily summary judgment is only appropriate after discovery. For example, summary judgment is premature when "the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues . . . are involved." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted); *see also Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 783, 787 (D.C. Cir. 1971) ("Summary judgment is only appropriate when there is no bona fide material issue, and Rule 56 clearly contemplates that the parties shall have opportunity for deposition in order to establish the existence of a material issue."). "[T]o defeat a summary judgment motion because more discovery is necessary, a party must submit an affidavit or declaration regarding the need for discovery," *Brent v. City of Cumberland Police Dep't*, 700 F. Supp. 3d 314, 320 (D. Md. 2023) (citing Fed. R. Civ. P. 56(d)), which Plaintiff has filed in her response to the motion, ECF No. 23 at 9–11.

But sometimes summary judgment is appropriate early in a case including where, as here (as discussed below), a moving party has shown that undisputed evidence

entitles it to judgment as a matter of law on a claim or issue, and where the opposing party is unable to show that "more discovery is necessary" on the issue. *Brent*, 700 F. Supp. 3d at 320.

### III. Discussion

#### A. Plaintiff has not alleged facts to establish that she was an employee of AMII

Claims under Title VII, ADA, MFEPA, and for wrongful termination can only be filed against one's employer. 42 U.S.C. § 2000e-2(a) (Title VII defining unlawful practices by an employer); 42 U.S.C. § 12112(a) (ADA limiting the rule to covered entities); 42 U.S.C. § 12111(2) (defining "covered entity" under the ADA as "an employer"); Md. Code Ann., St. Gov't § 20-606(a) (MFEPA statute defining unlawful practices by an employer); *Valle v. Clinical Reference Lab'y, Inc.*, Case No. 18-cv-02383-PX, 2019 WL 1167829, at *5 (D. Md. Mar. 13, 2019) (under Maryland law, a wrongful termination "claim may only proceed by an employee against her employer"). There are multiple doctrines governing whether an employment relationship exists: direct employment, the integrated employer test, or the joint employment doctrine. *See Garnes v. Maryland,* Case No. 17-cv-1430-RDB, 2018 WL 276425, at *4 (D. Md. Jan. 3, 2018) (citing *Glunt v. GES Exposition Serv., Inc.*, 123 F. Supp. 2d 847, 874 (D. Md. 2000)) (reasoning that under Title VII, if a plaintiff does not allege facts regarding a direct employment relationship, the court can consider the integrated employer test); *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 414 (4th Cir. 2015) (establishing the joint employment factors for Title VII claims); *William*, 86 F. Supp. 3d at 408 n.1 (holding that MFEPA is subject to the same interpretations as Title VII).

7

Plaintiff acknowledges that AMII was a franchisor but contends that she should be considered to have been an employee of AMII under the joint employment doctrine. ECF No. 33 at 9–10. To determine "whether an individual is jointly employed by two or more entities," a court considers nine factors:

> (1) authority to hire and fire the individual;
> (2) day-to-day supervision of the individual, including employee discipline;
> (3) whether the putative employer furnishes the equipment used and the place of work;
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> (5) the length of time during which the individual has worked for the putative employer;
> (6) whether the putative employer provides the individual with formal or informal training;
> (7) whether the individual's duties are akin to a regular employee's duties;
> (8) whether the individual is assigned solely to the putative employer; and
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Butler*, 793 F.3d at 414. "Courts evaluating franchise relationship[s] for joint employment have routinely concluded that a franchisor's expansive control over a franchisee does not create a joint employment relationship." *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 690 n.6 (D. Md. 2010) (citing *Singh v. 7-Eleven, Inc.*, Case No. c-05-04534, 2007 WL 715488, at *7 (N.D. Cal. Mar. 8, 2007)); *see also McCall v. Team Wash.*, Case No. 04-cv-2702-RWT, 2005 WL 8174696, at *1 (D. Md. Mar. 17, 2005) (dismissing Title VII and wrongful termination claims under Fed. R. Civ. P. 12(b)(1) as "the Court lacks subject matter jurisdiction over the employment-related claims where it is clear that [the franchisor] was not the [p]laintiff's employer").

AMII argues that Plaintiff has failed to allege facts that would establish that AMII employed Plaintiff jointly with either AMDS of Columbia or AMDS Baltimore (collectively, the "Franchisee Studios"). ECF No. 27-1 at 10. Plaintiff argues that she did sufficiently allege facts to show that AMII jointly employed her based on: (1) her statement that AMII "employed the Plaintiff," (2) the amended complaint naming AMII and Franchisee Studios "as 'Arthur Murray' Defendants," (3) her allegation to have experienced consistent discriminatory acts at both Franchisee Studios, and (4) her allegation that she was terminated after filing a workers' compensation claim. ECF No. 33 at 9–10; ECF No. 5 Intro, ¶¶ 2, FA 9–20. Plaintiff contends that these statements suggest that AMII exerted control over employment policies or training, AMII failed to enforce any anti-discrimination policies, and that AMII coordinated with Franchisee Studios for Plaintiff's terminations. ECF No. 33 at 9–10. Even reading the alleged facts in the light most favorable to Plaintiff, however, the amended complaint fails to allege facts to meet any one of the *Butler* factors.

Although, at the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare "labels and conclusions" are not entitled to the same assumption of truth. *Twombly*, 550 U.S. at 555. Plaintiff's naming of the three Defendants as "'Arthur Murray' Defendants" and broadly stating that AMII employed her at all relevant times are bare "labels and conclusion," which, without more, the Court cannot assume are true. To the extent that Plaintiff argues that the fact that she was "transferred" from AMDS of Columbia to AMDS Baltimore indicates employment decisions made by AMII, Plaintiff does not plead any facts regarding what entity coordinated the transfer or how she could have been *transferred* after alleging that she

9

was *fired*. ECF No. 33 at 11; ECF No. 5 ¶¶ 13, 15. The Court cannot discern from the facts alleged whether Plaintiff was fired by AMDS of Columbia and then subsequently applied for and was hired by AMDS Baltimore ten days later, or if someone from AMII, AMDS of Columbia, or AMDS Baltimore coordinated her transfer.

Plaintiff does not allege that AMII was involved in her hiring or training with either Franchisee Studio, that AMII was aware of her workers' compensation claim and instructed AMDS Baltimore to terminate her employment, that AMII was in possession of her employment records from Franchisee Studios, or any other allegation that would establish that AMII exerted sufficient control over Franchisee Studios to constitute a joint employer. Therefore, the Court will dismiss all claims against AMII, without prejudice.

## B. Whether AMDS of Columbia and AMDS Baltimore constitute "employers" under each claim

For discrimination and retaliation claims under Title VII, ADA, and MFEPA, "employer" is defined as a person or business that employs fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. 42 U.S.C. § 2000e(b) (Title VII); 42 U.S.C. § 12111(5)(A) (ADA); Md. Code Ann., St. Gov't § 20-601(d)(1)(i)(1)(2)(A) (MFEPA discrimination claims). For harassment or hostile work environment claims, MFEPA decreases the requisite number of employees from fifteen to one. Md. Code Ann., St. Gov't § 20-601(d)(1)(i)(2)(B) (defining "employer," for the purposes of a harassment claim, as "a person that[] is engaged in an industry or business; and . . . has one or more employees

for each working day in each of 20 or more calendar weeks in the current or preceding calendar year").[7]

Although not a jurisdictional requirement, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), "[t]he employee numerosity requirement [] is an essential element of *every* employment discrimination claim under Title VII." *Morrow v. Keystone Builders Res. Grp., Inc.*, Case No. 2:08-4119-CWH, 2010 WL 3672354, at *6 (D.S.C. Sept. 15, 2010). Given that MFEPA "is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII," that same pleading requirement applies. *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 408 n.1 (D. Md. 2015) (citing *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 481 (2007)); *see also Evans v. Larchmont Baptist Church Infant Care Ctr., Inc.,* Case No. 2:11-cv-306-FBS, 2012 WL 699529, at *3 (E.D. Va. Feb. 29, 2012) (dismissing ADA claim in part for failure to state facts indicating that the company employed fifteen or more employees); *Morrow*, 2010 WL 3672354, at *6–8 (dismissing Title VII claims for failure to meet the numerosity requirement); *White v. Am. Fed'n of State, County and Govt. Employees Union Loc. 2250*, 2024 WL 3161589, at *4 (D. Md. June 25, 2024) (dismissing Title VII claims in light of the plaintiff's concession that the company employed fewer than fifteen employees).

      **i.**      **The Amended Complaint does not sufficiently allege that AMDS of Columbia constitutes an "employer" under the discrimination and retaliation claims**

---

[7] AMDS of Columbia and AMDS Baltimore do not dispute they are "employers" under Count 3 and employed at least one person during the relevant times.

AMDS of Columbia argues that Plaintiff failed to allege that it employs fifteen or more employees and thus qualifies as an "employer" for purposes of the discrimination and retaliation claims (Counts 1, 2, and 4). ECF No. 14-1 at 3. Plaintiff argues that she has plausibly alleged that AMDS of Columbia qualifies as an "employer" based on her allegations that (1) AMDS of Columbia is a "company doing business in the state of Maryland," (2) Plaintiff worked for AMDS of Columbia, (3) a manager supervised her and fired her, and (4) two other African American employees were also fired. ECF No. 24 at 7; ECF No. 5 ¶¶ 3, FA 6, 13, 14. Plaintiff alleges that these facts "reasonably suggest[] a workforce that could reach 15 employees." ECF No. 24 at 7. The Court disagrees.

Based on the facts alleged, Plaintiff has at most alleged that AMDS of Columbia employed four or five employees (her, a manager, another unnamed employee, and two other named employees). *See* ECF No. 5 ¶¶ FA 6–7, FA 9, 14. Moreover, Plaintiff's statement regarding the two named employees does not allege that she worked at the same time as them, that they worked at the same time as each other, or that they were employed within the two-year time period used to calculate the number of employees to meet the numerosity requirement. Therefore, even reading the facts most favorably to the Plaintiff, the Court can infer that AMDS of Columbia employed at least three and at most five people at any one time. Accordingly, the Court will grant AMDS of Columbia's motion to dismiss Counts 1, 2, and 4, without prejudice.

### ii.     AMDS Baltimore does not constitute an "employer" under the discrimination and retaliation claims

AMDS Baltimore also argues that Plaintiff failed to allege that it employs fifteen or more employees and thus qualifies as an "employer" under the statutes. ECF No. 16 at

12

4. AMDS Baltimore further argues that, even if Plaintiff had adequately alleged that it met the numerosity requirement, according to payroll records attached to the motion, AMDS Baltimore did not employ more than six employees during 2022 and 2023 and, therefore, does not qualify as an "employer" under Title VII, ADA, or MFEPA for the discrimination and retaliation claims (Counts 1, 2, and 4). *Id.* at 5; ECF No. 16-1 at 5–18.

"When 'matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" *Laughlin v. Metro. Wash. Airports Auth.*, 194 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(d)).

The payroll records provided by ADP, the payroll company for AMDS Baltimore, clearly show that from as early as December 25, 2021 (approximately 75 weeks before the start of Plaintiff's employment with AMDS Baltimore) through as late as December 29, 2023 (approximate 28 weeks after the termination of Plaintiff's employment with AMDS Baltimore), AMDS Baltimore did not employ more than six employees during any pay period. ECF No. 16-1 at 5–18. Plaintiff does not dispute the veracity of the payroll records and in fact requests discovery of those same records in her Rule 56 affidavit. ECF No. 23 at 7, 10. Plaintiff only disputes the reliance on the manager's declaration asserting that AMDS Baltimore employed fewer than six employees and that Plaintiff's last day of employment was on June 9, 2023, contradicting her allegation that she was terminated on June 15, 2023. *Id.* at 7. Although there is a dispute regarding Plaintiff's exact date of termination, this six-day difference is immaterial given that the payroll records provided by AMDS Baltimore extend well before and after either possible termination date. And Mr. McCraw's statements in his declaration regarding the number of employees is easily verifiable by the payroll records provided. ECF No.

13

16-1 at 2–3, 5–18. To the extent Plaintiff argues that discovery is needed to assess a potential joint-employer status with AMII, as the Court has stated previously, Plaintiff failed to plausibly allege facts to support the argument that AMII was a joint employer with AMDS Baltimore. *See* III.A., *infra*.

Therefore, the undisputed evidence establishes that AMDS Baltimore does not constitute an "employer" for the discrimination and retaliation claims under Title VII, ADA, or MFEPA. Accordingly, the Court will grant AMDS Baltimore's motion for summary judgment as to Counts 1, 2, and 4.

### C.     AMII is not entitled to attorneys' fees

The Court may assess attorneys' fees against a party "where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Strag v. Board of Trustees, Craven Comm. Coll.*, 55 F.3d 943, 955 (4th Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)); *Letren v. Trans Union, LLC*, Case No. 15-cv-3361, 2017 WL 4098743, at *6 (D. Md. Sept. 15, 2017). "A party has acted in bad faith if he or she knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Letren*, 2017 WL 4098743, at *6 (quoting *Nasser v. WhitePages, Inc.*, Case No. 4:12-cv-00097, 2014 WL 1323170, at *6 (W.D. Va. Apr. 1, 2014) (internal quotations omitted). The Court may also assess attorneys' fees should any attorney "so multipl[y] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.

Although the Court dismisses the claims against AMII under Rule 12(b)(6), the Court does not find that Plaintiff pursued the claims against AMII in bad faith or that Plaintiff's counsel "multiplie[d] the proceedings in [the] case unreasonably and

vexatiously." 28 U.S.C. § 1927. Accordingly, the Court will deny AMII's motion for attorneys' fees.

### D. Subject-Matter Jurisdiction

Although none of the Defendants raised the issue of subject-matter jurisdiction, because subject-matter jurisdiction raises questions of the Court's authority to adjudicate a case, the Court must determine whether it has jurisdiction over the claims before ruling on the merits. Fed. R. Civ. P. 12(b)(1); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)); *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The amended complaint states that this Court has subject-matter jurisdiction pursuant to diversity jurisdiction. ECF No. 5 ¶ Jurisdiction 6. But the complaint also alleges that all parties are domiciled in Maryland. *Id*. ¶¶ 1–4. Given that the parties lack complete diversity, diversity jurisdiction cannot apply. 28 U.S.C. § 1332(a). Instead, the Court has federal question jurisdiction because Plaintiff has alleged claims under Title VII and ADA and has supplemental jurisdiction for claims under the MFEPA and common law. 28 U.S.C. § 1331; 28 U.S.C. § 1367(a). Should the federal claims ultimately remain dismissed, the Court reserves on the question of whether to decline supplemental jurisdiction over any remaining state claims. 28 U.S.C. § 1367(c).

### IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss or for summary judgment (ECF No. 15, 16, 27) will be granted in part, denied in part, and reserved in part. The Court will grant AMII's motion to dismiss all counts, AMDS of Columbia's

motion to dismiss as to Counts 1, 2, and 4, and AMDS Baltimore's motion for summary judgment as to Counts 1, 2, and 4. The Court will deny AMII's motion for attorneys' fees. The Court will deny as moot AMII's alternative motion for summary judgment and AMDS Baltimore's motion to dismiss Counts 1, 2, and 4. The Court will reserve ruling on AMDS Baltimore's motion to dismiss Count 3 pending Plaintiff's decision whether to move to amend her complaint; absent an amended complaint that the Court concludes states federal claims on which relief can be granted, the Court expects to decline to exercise supplemental jurisdiction over Count 3.

In addition, Plaintiff's motion for leave to file a second amended complaint (ECF No. 36) will be denied as moot without prejudice. As to the claims that the Court herein dismisses without prejudice, Plaintiff may file a renewed motion for leave to amend in the event she believes the deficiencies identified herein can be cured. A separate order and judgment follow.

Date:  October 16, 2025                          _____/s/_____
                                                 Adam B. Abelson
                                                 United States District Judge